UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-8207-BER

UNITED STATES OF AMERICA

v.

HECTOR ROMAN PINEDA SANCHEZ,

        **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

4. 4.  Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  ☐ Yes  ☑ No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

BY: *Rinku Tribuiani*
RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.    0150990
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:     (561) 820-8711
Fax:    (561) 820-8777
Email:  Rinku.Tribuiani@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
|  | ) Case No. 25-8207-BER |
| HECTOR ROMAN PINEDA SANCHEZ, | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   04/05/2025 - 04/10/2025   in the county of   Palm Beach   in the
Southern District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a) and 846 | Conspiracy to PWID more than 500 grams of methamphetamine. |
| 21 U.S.C. § 846 | Attempted PWID more than 500 grams of methamphetamine. |

This criminal complaint is based on these facts:
See Attached Affidavit

FILED BY ___TM___ D.C.
*Apr 18, 2025*
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

☑ Continued on the attached sheet.

*David DiConza*
*Complainant's signature*

David DiConza, HSI Special Agent
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date: 4/18/25

*Judge's signature*

City and state:   West Palm Beach, FL       Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

I, David DiConza, being first duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND AND INTRODUCTION

I make this affidavit in support of an application for a criminal complaint based on the following:

1. I have been a Special Agent with Homeland Security Investigations (HSI) since December 2012. As a Special Agent, I have received extensive training and have been assigned to conduct investigations of criminal violations of the United States Code concerning illegal drug trafficking, importation of narcotics into the United States, and criminal violations of immigration laws. Furthermore, I am trained and experienced in the methods drug traffickers use in importing, concealing, processing, packaging, warehousing and distributing controlled substances. I am responsible for investigating narcotics entering the United States and investigating violations of statutes relating to Immigration and Customs Enforcement, including Title 21 of the United States Code. Prior to my employment with HSI, I was employed as a deportation officer with Immigration and Customs Enforcement (ICE) for approximately two years. My duties and responsibilities including enforcement criminal and administrative immigration laws of the United States. Prior to being a deportation officer, I was employed as an officer with U.S. Customs and Border Protection for approximately three years.

2. The facts contained in this affidavit are based on my own personal knowledge, as well as information provided to me by other law enforcement officers and civilians. This affidavit is presented for the limited purpose of establishing probable cause for the arrest of Hector Roman PINEDA SANCHEZ for conspiracy to possess with intent to distribute, and attempted possession with intent to distribute, more than 500 grams of a mixture and substance containing a detectable

amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  This affidavit does not contain all the facts known to me relating to this investigation.

## PROBABLE CAUSE

3. On April 3, 2025, U.S. Customs and Border Protection (CBP) Officers working at the DHL HUB mail facility in Cincinnati, Ohio were conducting inbound enforcement operations and identified a DHL parcel bearing airway bill tracking number 2674382826 (hereinafter "package"), which was sent from Obdulia Perez Francisco I Madero Ote 606, Esquipula-Pungarabato Guerrero, Mexico to Viridiana Perez, 4323 Barbridge Road, West Palm Beach, FL 33406, United States (hereinafter "listed address").  The manifest for the package indicated that the package contained "mens huaraches (shoes)."  The DHL mail facility was the point of entry into the United States for the package.  The package was placed on hold for examination by CBP Officers.

4. During the examination of the package, CBP Officers utilized a K-9 certified in narcotics detection.  The K-9 alerted the CBP Officers to the odor of narcotics inside the package.  CBP Officers opened the package pursuant to their border authority.  An examination of the package revealed several large white bottles containing an unknown substance and assorted Mexican food items.  On April 5, 2025, the substance within the bottles was tested by CBP Officers using a Nik Test Kit "U" and the substance tested positive for methamphetamine.  The gross weight of the methamphetamine contained within the bottles was 14.95 kilograms.

5. On April 5, 2025, Homeland Security Investigations (HSI) West Palm Beach, Florida was notified of the seizure by CBP Officers and requested that the package be sent to HSI Agents in West Palm Beach, Florida to attempt a controlled delivery. On April 7, 2025, HSI West Palm Beach, Florida received the package. Agents opened the package and found various food

items, two pairs of slippers and seven bottles filled with a liquid substance bearing various labels written in Spanish. Agents saw a crystalized residue on some of the bottlecaps on the seven bottles. Your Affiant removed the bottles with the suspected methamphetamine for safety and security reasons and safeguarded the controlled substance for laboratory analysis. Similar bottles mimicking the appearance of the seized methamphetamine and re-packaged to match its original condition in shape and size were used for the controlled delivery. Each of the replacement bottles were transfixed with the same labels that were on the bottles with suspected methamphetamine. The replacement bottles were placed inside the same exterior package originally mailed by the sender.

6. Agents conducted open source and law enforcement database queries of the listed recipient and address, but were unable to identify any individual living at the listed address with the name "Viridiana Perez". Agents identified prior mail parcel shipments sent to the listed address; however, none originated in Mexico. I am aware from experience that it is common for traffickers to utilize fictitious names and addresses on packages containing contraband to avoid detection by law enforcement.

7. Agents obtained both a sealed tracking warrant for the package and a sealed anticipatory search warrant for the listed address.

8. On April 10, 2025, HSI and partnering law enforcement agencies performed a controlled delivery of the package containing sham narcotics to the listed address. The package was equipped with a tracker and transmitter device designed to notify agents when the package was opened.

9. At approximately 3:20 P.M., a law enforcement officer, while working in an undercover capacity posing as a DHL mail courier, delivered the package to the listed address,

3

4323 Barbridge Rd., a multi-family dwelling, by knocking on the listed door and placing the package on the ground next to the door.

10.  At approximately 3:59 P.M., an unknown male wearing grey pants exited 4321 Barbridge Rd., the unit adjacent to the listed address, and took possession of the package. The unknown male then re-entered 4321 Barbridge Rd., carrying the package.

11.  At approximately 4:09 P.M., agents observed a white Scion four door vehicle drive to the rear of the residences of 4323 and 4321 along the grass into the backyard area. From their vantage point, agents were unable to see anyone exit or enter the vehicle.

12.  At approximately 4:11 P.M., agents observed the white Scion drive to the front of the listed residence, 4321 Banbridge Rd.  An unknown female later, identified as A.L.M., exited the residence of 4321 and entered the passenger seat of the Scion. Agents followed the Scion and during this time, through electronic surveillance monitoring, agents were able to verify that the package was inside the Scion vehicle. Agents proceeded to follow the Scion to 2427 Avenida Madrid Este, West Palm Beach, Florida. As they approached, agents observed the Scion parked in the driveway in front of 2427 Avenida Madrid Este, West Palm Beach, Florida.

13.  At approximately 4:30 P.M., agents received notification from the electronic monitoring beacon that the parcel had been opened and its contents removed. Agents approached the residence and observed A.L.M. exit the residence on the south side of the residence side via the door that faces east. Agents identified themselves and detained A.L.M. and made several announcements at the front door identifying themselves as law enforcement.

14.  Due to the agents' fears that evidence would be destroyed, or the monitoring devices would be discovered, agents opened the unlocked front door and encountered PINEDA SANCHEZ standing near the doorway. Agents detained PINEDA SANCHEZ and conducted a

4

protective sweep of the interior of the residence to ensure that no additional people were inside. While conducting this protective sweep, agents observed the package opened and on the ground with its contents removed. PINEDA SANCHEZ was wearing the slipper style shoes which were contained inside the package.

15. Agents conducted a post-*Miranda* interview with PINEDA SANCHEZ in the Spanish language. PINEDA SANCHEZ waived his *Miranda* rights and agreed to speak to the agents. During the interview, PINEDA SANCHEZ stated that he was instructed to pick up the package at the listed address by a person named Leondro Romero, who lives in Mexico. PINEDA SANCHEZ stated that he opened the package inside his residence. PINEDA SANCHEZ stated he did not know who lives at the listed address and did not know the person whose name was on the DHL shipping label identified as "Viridiana Perez". PINEDA SANCHEZ stated that he was not getting paid to pick up the package by ROMERO, but instead, he was getting the food products inside the package. PINEDA SANCHEZ told agents that the liquid contained within the bottles was medication. PINEDA SANCHEZ stated that he was a citizen and national of Mexico with no legal status in the United States.

16. PINEDA SANCHEZ was asked by the agents if PINEDA SANCHEZ would consent to the search of his cell phone that was on his person when he was detained, and a second cell phone that was inside his residence and in plain view. PINEDA SANCHEZ consented to the search of both cell phones. He signed a consent in the Spanish language to allow agents to search the cell phones, and he granted permission to agents to retrieve the second phone that was located inside his residence.

17. PINEDA SANCHEZ was administratively detained and transported to the U.S. Border Patrol Office in West Palm Beach, Florida for processing.

18. A cursory search of PINEDA SANCHEZ's cell phone that was found on his person when he was detained located text messages and audio texts between PINEDA SANCHEZ and a contact named "Nano" 52 767 101 5522 on WhatsApp. The country code for Mexico is 52. From my training and experience, I know Mexico to be a source country for methamphetamine and other narcotics. PINEDA SANCHEZ used the name "Juan Soto" during his WhatsApp chats. Agents believe Nano was the nickname for Leandro ROMERO due to dates and times the texts were sent and received. The messages spanned April 9, 2025 through April 10, 2025.

19. In these texts, there was a discussion in the Spanish language of the status of a particular shipment and the fact that the shipment was cleared by U.S. Customs and would be on its way. In addition, there was a picture of a DHL correspondence referencing shipment DHL Airway Bill 267438826 which was the same DHL Airway Bill for the package. PINEDA SANCHEZ's cell phone also contained communications with Nano about vehicles being in the area. Specifically, PINEDA SANCHEZ sent a video to Nano showing various vehicles. PINEDA SANCHEZ followed up by commenting in Spanish, "Puro carro como particular incubiertos," which translated to, "This car looks particularly undercover". Nano responded, "Puros desos traen en eso caen," which translated to, "They will fall on those pure desires they bring." Nano added, "Anda Asta la dea," which translated to "Even the DEA." There was also a picture in the texts taken by PINEDA SANCHEZ and sent to Nano of the 7 bottles that were contained inside the package taken right after PINEDA SANCHEZ opened the package.

20. A.L.M. invoked her rights and was not interviewed by agents. Law enforcement data record checks indicated she is a Guatemalan national with a pending I-130 application (Petition for Alien Relative). Agents placed A.L.M. in a Florida Highway Patrol (FHP) car while she was detained. While in the patrol car, A.L.M. produced a dollar bill containing a white powdery

substance that investigators identified as powder cocaine. This was observed and recorded on the in-vehicle recording system and investigators seized the substance which was then field-tested positive as cocaine. A.L.M. was administratively arrested and transported to the U.S. Border Patrol Office in West Palm Beach, Florida for processing.

21.     Agents received a state search warrant for the location in which PINEDA SANCHEZ opened the package, 2427 Avenida Madrid Este, South Unit, West Palm Beach, Florida 33415.  Upon execution of the search warrant, investigators observed that the residence contained minimal personal effects, food, or basic household necessities. The kitchen was notably bare of cooking supplies, and the pantry and refrigerator were nearly empty. On the kitchen counter, agents located a cardboard shoebox containing plastic sandwich bags, a metal spoon with suspected cocaine residue, a digital scale with suspected cocaine residue, scissors, and a container of super inositol, a known cutting agent commonly used to dilute narcotics. Additionally, within a kitchen drawer, agents located a plastic bag containing approximately one (1) ounce of a semi-compressed powdery substance. The substance later field-tested positive for cocaine. Investigators are aware, based on their training and experience, that semi-compressed cocaine is indicative of product recently broken down or separated from a kilogram brick.

22.     On April 16, 2025, agents from Homeland Security Investigations (HSI) traveled to the Broward Transitional Center to interview PINEDA SANCHEZ.  Agents conducted a post-*Miranda* interview with PINEDA SANCHEZ in the Spanish language.  PINEDA SANCHEZ waived his *Miranda* rights and agreed to speak to the agents.  In an audio recorded interview, PINEDA SANCHEZ essentially stated the following.  PINEDA SANCHEZ confirmed to agents that he was instructed by Nano to retrieve the package from an unknown male at 4323 Barbridge Road. PINEDA SANCHEZ also confirmed that Leondro ROMERO is in fact "Nano".  PINEDA

SANCHEZ was asked by agents if during the two weeks that the package was enroute to West Palm Beach, whether PINEDA SANCHEZ believed that the package could have contained a prohibited item. PINEDA SANCHEZ stated to the agents that in his mind, that thought occurred to him and he believed the package contained something bad. Agents asked PINEDA SANCHEZ when he had this realization. PINEDA SANCHEZ answered that he realized when Nano told him the package would now arrive on Friday or Thursday. (According to DHL, the package was originally scheduled to arrive Tuesday April 8, 2025, but was delayed after being held by U.S. Customs and Border Protection.) Agents then asked PINEDA SANCHEZ at what moment he suspected the package contained prohibited substances. PINEDA SANCHEZ answered, "like how it [the package] was meant for Tuesday, when he [Nano] told me it was meant for Tuesday. I said it must be bringing something bad and that's why it didn't arrive…" PINEDA SANCHEZ indicated that he intended to hold the package until he received further instructions from Nano. Agents asked PINEDA SANCHEZ whether he had ever previously received any international mail packages like this one. PINEDA SANCHEZ denied ever previously receiving an international mail package like this one.

23. The previous statements are a synopsis of PINEDA SANCHEZ's audio-recorded interview and do not include all statements made by PINEDA SANCHEZ to law enforcement.

24. On April 18, 2025, agents continued to search the cell phone taken from PINEDA SANCHEZ's person. They located a WhatsApp chat dated February 23, 2025. In this chat, PINEDA SANCHEZ sent a contact listed as "R" a photo of a scale showing a weight of "13.31". Agents could not determine whether this was in kilograms or pounds or what this photo depicted. The recipient of the photo, "R," acknowledged receipt. PINEDA SANCHEZ told "R" to give it to him directly. "R" sent PINEDA SANCHEZ an address of 101 N.E. 19th Street, Pompano

8

Beach, Florida 33060. The next day, on February 24, 2025, "R" instructed PINEDA SANCHEZ to use a different address, 2051 N.E. 22nd Terrace, Pompano Beach, Fl 33060. Agents located a shipment that was mailed from Mexico to "Viridiana Perez," 2051 N.E. 22nd Terrace, Pompano Beach, Fl 33060. Agents conducted open source and law enforcement database queries of the listed recipient and address but were unable to identify any individual living at the listed address with the name "Viridiana Perez". According to the DHL open-source webpage, the package was delivered on February 27, 2025. The package was manifested as "Huaraches". The shipper of this package was Obdulia Perez Francisco I Madero Ote 606 GR, Esquipula-Pungara, 40662, Mexico. (This is the same sender for the package seized on April 3, 2025.) The weight listed for the package was 13 kilograms. On February 27, 2025, PINEDA SANCHEZ sent a text in Spanish indicating that he had already received it, and PINEDA SANCHEZ asked "R" how many medicine bottles were in the package. These communications contradict PINEDA SANCHEZ's earlier statement to agents that the April 3, 2025 international package was the first time that he received such a package.

25.     Based on the foregoing, your affiant submits that probable cause exists to arrest and charge Hector Roman PINEDA SANCHEZ with conspiracy to possess with intent to distribute, and attempted possession with intent to distribute, more than 500 grams of a mixture and substance

containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

                    Respectfully submitted,

                    *David DiConza*
                    David DiConza
                    Special Agent
                    Homeland Security Investigations

Subscribed and sworn to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P. 4(d) and 4.1 in West Palm Beach, Florida this __18__ day of April 2025.

                    *Bruce Reinhart*
                    BRUCE E. REINHART
                    UNITED STATES MAGISTRATE JUDGE